UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOSHUA LONG,

                Plaintiff,

-against-

THE CITY OF NEW YORK; RAYMOND W.
KELLY; INSPECTOR DENNIS DEQUATRO;
DEPUTY INSPECTOR TIMOTHY J. BEAUDETTE;
SERGEANT WILLIAM JOHNSON, SHIELD NO.
2467; LIEUTENANT ANTHONY CARUSO;
POLICE OFFICER CONOR MCDONALD, TAX
NO. 949298; POLICE OFFICER CHARLES
YARTON, TAX NO. 927693; POLICE OFFICER
JAVIER PEREZ, SHIELD NO. 18458; POLICE
OFFICER PETER BROUGHAL, TAX NO. 948698;
POLICE OFFICER WILLIAM FOLEY; POLICE
OFFICER KEITH CHATTERTON, TAX NO.
925067; POLICE OFFICER KEVIN MCLEISH, TAX
NO. 928758; AND JANE/JOHN DOES 1 – 50,

                Defendants.
------------------------------------------------------------X

11 Civ. 5125 (SAS)(THK)

**FIRST AMENDED
COMPLAINT AND
JURY DEMAND**

**ECF CASE**

        Plaintiff Joshua Long, by and through his attorneys, Emery Celli Brinckerhoff & Abady LLP, for his First Amended Complaint alleges as follows:

### INTRODUCTION

        1.     This is a civil rights action brought by plaintiff Joshua Long ("Mr. Long" or "plaintiff") for damages and injunctive relief pursuant to 42 U.S.C. § 1983. While lawfully begging and promoting marijuana tolerance on the public sidewalks of New York City, Mr. Long has been subjected to repeated illegal harassment, arrests, and prosecution by the New York City Police Department ("NYPD").

1

2.  Mr. Long regularly stands in the Times Square area with a sign saying "Help! I Need Money For Weed!" and accepts donations from people walking by.

3.  Mr. Long keeps copies of the text of the New York State disorderly conduct statute and the New York City aggressive solicitation ordinance pasted to the back of his sign. He obeys these and other laws governing solicitation at all times, and makes good faith efforts to cooperate with law enforcement officers he encounters.

4.  Though the First Amendment protects Mr. Long's right to stand on the sidewalk with his sign, he has been, and continues to be, regularly and wrongfully arrested, charged, and harassed by police officers.

5.  Mr. Long now seeks redress against the NYPD officers who arrested and harassed him, their supervisors, the Commissioner of the NYPD, and the City of New York.

## THE PARTIES

6.  Mr. Long is a citizen of the United States and a Navy veteran. At all relevant times, he resided in New York City.

7.  Defendant City of New York ("City") is a municipality organized and existing under the laws of the State of New York. At all relevant times, the City, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel, including the defendants named in this complaint. In addition, at all relevant times, the City was responsible for enforcing NYPD rules, and for ensuring that NYPD personnel obey the laws of the United States and the State of New York.

8.  At all relevant times, defendant Raymond W. Kelly was the Police Commissioner of the City of New York and, as such, made and enforced NYPD policy, including without limitation the policy of both the Midtown North Precinct and Midtown South Precinct. At all relevant times, defendant Kelly acted in his capacity as agent, servant, and employee of defendant City, within the scope of his employment as such, and under color of state law. Defendant Kelly is sued in his official capacity.

9.  At all relevant times, defendant Dennis DeQuatro was an Inspector in the NYPD and Commanding Officer of Midtown South Precinct in the County of New York, New York, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. Defendant DeQuatro is the highest ranking uniformed member of Midtown South Precinct, and is responsible for setting policy, and for the supervision, oversight, and discipline of the uniformed police officers in his precinct. As Commanding Officer, defendant DeQuatro is regularly provided with reports of arrests and summonses in his Precinct. Defendant DeQuatro is sued in his official capacity.

10. At all relevant times, defendant Timothy J. Beaudette was a Deputy Inspector and Commanding Officer of Midtown North Precinct in the County of New York, New York, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. Defendant Beaudette is the highest ranking uniformed member of Midtown North Precinct, and is responsible for setting policy, and for the supervision, oversight, and discipline of the uniformed police officers in his precinct. As Commanding Officer,

defendant Beaudette is regularly provided with reports of arrests and summonses in his Precinct. Defendant Beaudette is sued in his official capacity.

11. At all relevant times, defendant Sergeant William Johnson, Shield No. 2467, was a sergeant in the NYPD acting in the capacity of agent, servant, and employee of defendant City, and within the scope of his employment as such. On information and belief, on January 13, 2011, defendant Johnson ordered Mr. Long's arrest without cause while he was lawfully begging on the sidewalk. Defendant Johnson is sued in his individual and official capacities.

12. At all relevant times, Lieutenant Anthony Caruso was a lieutenant in the NYPD acting in the capacity of agent, servant, and employee of defendant City, and within the scope of his employment as such. On information and belief, on June 5, 2011, defendant Caruso ordered Mr. Long's arrest without cause while he was lawfully begging on the sidewalk. Defendant Caruso is sued in his individual and official capacities.

13. At all relevant times, defendant NYPD Officer Conor McDonald, Tax No. 949298, was an NYPD officer acting in the capacity of agent, servant, and employee of defendant City, and within the scope of his employment as such. On information and belief, on January 13, 2011, defendant McDonald arrested Mr. Long without cause while he was lawfully begging on the sidewalk. Defendant McDonald is sued in his individual and official capacities.

14. At all relevant times, NYPD Officer Charles Yarton, Tax No. 927693, was an NYPD officer acting in the capacity of agent, servant, and employee of defendant City, and within the scope of his employment as such. On information and belief, on February 1, 2011, defendant Yarton arrested Mr. Long without cause while he was

lawfully begging on the sidewalk, and sprayed Mr. Long with pepper-spray while he was in a holding cell. Defendant Yarton is sued in his individual and official capacities.

15. At all relevant times, defendant NYPD Officer Javier Perez, Shield No. 18458, was an NYPD officer acting in the capacity of agent, servant, and employee of defendant City, and within the scope of his employment as such. On information and belief, on February 1, 2011, defendant Perez arrested Mr. Long without cause while he was lawfully begging on the sidewalk. Defendant Perez is sued in his individual and official capacities.

16. At all relevant times, NYPD Officer Peter Broughal, Tax No. 948698, was an NYPD officer acting in the capacity of agent, servant, and employee of defendant City, and within the scope of his employment as such. On information and belief, on June 5, 2011, defendant Broughal arrested Mr. Long without cause while he was lawfully begging on the sidewalk. Defendant Broughal is sued in his individual and official capacities.

17. At all relevant times, NYPD Officer William Foley was an NYPD officer acting in the capacity of agent, servant, and employee of defendant City, and within the scope of his employment as such. On information and belief, on June 5, 2011, defendant Foley arrested Mr. Long without cause while he was lawfully begging on the sidewalk. Defendant Foley is sued in his individual and official capacities.

18. At all relevant times, NYPD Officer Keith Chatterton, Tax No. 925067, was an NYPD officer acting in the capacity of agent, servant, and employee of defendant City, and within the scope of his employment as such. On information and belief, on October 16, 2011, defendant Chatterton arrested Mr. Long without cause while he was

lawfully begging on the sidewalk. Defendant Chatterton is sued in his individual and official capacities.

19. At all relevant times, NYPD Officer Kevin McLeish, Tax No. 928758, was an NYPD officer acting in the capacity of agent, servant, and employee of defendant City, and within the scope of his employment as such. On information and belief, on October 16, 2011, defendant McLeish arrested Mr. Long without cause while he was lawfully begging on the sidewalk. Defendant McLeish is sued in his individual and official capacities.

20. At all relevant times, defendants "Jane/John Does 1 – 50" were NYPD officers who, acting in the capacity of agents, servants, and employees of defendant City and within the scope of their employment as such, a) arrested Mr. Long, b) issued summonses to Mr. Long, c) seized Mr. Long without reasonable suspicion or probable cause, d) compelled Mr. Long to move along, e) instructed other officers to take one or more of the actions listed in a – d above, or f) failed to prevent others from taking any action listed in letters a – e above. Mr. Long is unable to determine the names of these NYPD officers at this time and thus sues them under a fictitious designation.

21. Defendants Johnson, Caruso, McDonald, Perez, Broughal, Foley, Chatterton, McLeish and Does 1 – 50 are referred to collectively as the "Police Officer Defendants" herein.

22. All defendants and each of them, separately and in concert, engaged in acts and/or omissions that constituted deprivations of Mr. Long's constitutional rights. Though these acts were carried out under color of law, they had no justification or excuse, and were instead gratuitous, illegal, improper, and unrelated to any activity in

which law enforcement officers may appropriately and legally engage in the course of protecting persons and property or ensuring civil order.

## JURISDICTION AND VENUE

23. This action arises under the First, Fourth, and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §§ 1983 and 1988.

24. This Court has jurisdiction of these federal claims pursuant to 28 U.S.C. §§ 1331, and 1343(a) (3) and (4).

25. This Court has supplemental jurisdiction over the New York State claims pursuant to 28 U.S.C. § 1367.

26. All acts complained of occurred in the Southern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

27. All federal claims fall within the three years statute of limitations for actions brought in New York under 42 U.S.C. § 1983. All state claims fall within the one year statute of limitations for intentional torts.

## JURY DEMAND

28. Plaintiff demands trial by jury in this action.

## FACTS

29. After being discharged from the U.S. Navy, Mr. Long moved to New York City.

30. Thereafter, Mr. Long made a sign saying "Help! I Need Money For Weed!" and held it up while standing on various New York City sidewalks. He quickly discovered that his sign attracted the attention of passersby and that, more often than not,

people would give him money. Given his success, he decided to stand on the sidewalk with his sign on a regular basis.

31.    Though Mr. Long initially stood with his sign at a number of different locations between 14th Street and Central Park, experience soon taught him that passersby in Times Square were most responsive. He therefore decided to hold up the sign exclusively in the Times Square area.

32.    Mr. Long has been standing in Times Square with his sign on and off for over a year and has become a fixture in the area. He has met several tourists who told him that they had seen him the summer before, and that chatting with him had been a highlight of their trip to New York.

33.    Wanting to ensure that he behaved lawfully while standing with his sign, Mr. Long researched New York State and New York City laws concerning disorderly conduct and solicitation, and read a leading Southern District of New York case on the topic, *Loper v. NYPD*, 802 F. Supp. 1029 (S.D.N.Y. 1992), *aff'd*, 999 F.2d 699 (2d Cir. 1993).

34.    Times Square, from 45th Street south, is in the NYPD Midtown South Precinct's territory. Times Square, from 45th Street north, is in the NYPD Midtown North Precinct's territory.

35.    While standing on the street with his sign, Mr. Long keeps his back against buildings or walls in order to avoid blocking pedestrian traffic. He never stands in the entranceway to a building.

36.    Mr. Long is careful not to let crowds gather around him if doing so would block the sidewalk.

37.     Despite Mr. Long's compliance with all relevant State and City laws, he has been repeatedly charged with allegedly illegal conduct.

38.     On May 31, 2010, Mr. Long was arrested while he was standing on the sidewalk near the corner of West 45th Street and Broadway, peacefully holding his sign.

39.     On June 4, 2010, Mr. Long was arrested while standing on the sidewalk in the Times Square area, peacefully holding his sign.

40.     On January 13, 2011, defendant McDonald arrested Mr. Long while he was standing on the sidewalk near the corner of West 45th Street and Broadway, peacefully holding his sign. Upon information and belief, defendant McDonald was ordered to arrest Mr. Long by defendant Johnson.

41.     On February 1, 2011, defendant Yarton and defendant Perez arrested Mr. Long while he was standing on the sidewalk near the corner of West 45th Street and Broadway, peacefully holding his sign. Defendant Yarton brought Mr. Long to the station house and placed him in a holding cell. Without cause, defendant Yarton sprayed pepper-spray into Mr. Long's eyes while Mr. Long was by himself in the locked holding cell. As a result of this incident, Mr. Long's eyes were injured and he was treated at Bellevue Hospital.

42.     On June 5, 2011, defendant Broughal and defendant Foley arrested Mr. Long while he was standing on the sidewalk near the corner of West 45th Street and Broadway, peacefully holding his sign. Prior to his arrest, Mr. Long had complied with defendant Caruso's request to see his identification.

43.     On October 16, 2011, Mr. Long was arrested while standing peacefully with his sign against the wall of a restaurant near the corner of West 46th Street and

Broadway. Prior to being placed under arrest, two NYPD officers, defendant Chatterton and defendant McLeish, approached Mr. Long and told him that his sign was "disrespectful" and that he would have to move. When Mr. Long asserted his rights and did not comply with the officers' order to "move along", the officers positioned themselves directly in front of Mr. Long so as to block him from pedestrian view. After a short time, the officers again ordered Mr. Long to move from his location. This time, Mr. Long obliged by moving to the other side of the sidewalk, making sure to keep his back as close to the curb as he could. In response, defendants Chatterton and McLeish repositioned themselves in front of Mr. Long's new location to again block him from view. Frustrated, Mr. Long elected to move away from the area. He returned a short time later to request the badge numbers of defendants Chatterton and McLeish. Defendant Chatterton responded by grabbing Mr. Long's arm and pushing him against the wall of a building. Defendant Chatterton pinned Mr. Long to the wall and twisted his arm in such a way as to cause Mr. Long pain. When Mr. Long asked defendant Chatterton to loosen his grip, defendant Chatterton refused. Several other NYPD officers (Doe defendants) arrived at the scene shortly thereafter and Mr. Long was formally placed under arrest.

44. In addition to these repeated incidents, Mr. Long has been regularly harassed by NYPD officers, who tell him to move at least once a day. Mr. Long is frequently told to move along multiple times in a single day.

45. These numerous arrests and other harassment have diminished Mr. Long's ability to lawfully beg in Times Square. On multiple occasions, Mr. Long has chosen to forgo begging rather than risk an encounter with NYPD officers. Nonetheless, Mr. Long

still regularly stands in Times Square with his sign and intends to continue doing so for the foreseeable future.

46.   As a direct and proximate result of the unconstitutional seizures of his person, false arrests, false imprisonment, malicious prosecutions, assault, and battery, Mr. Long has suffered and/or continues to suffer pain and suffering, mental anguish, reputational injury, physical injury, loss of livelihood, and other losses.

### FIRST CAUSE OF ACTION
42 U.S.C. § 1983 / Fourth and Fourteenth Amendments
(Against defendant Yarton and Police Officer Defendants)

47.   Mr. Long repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

48.   By reason of the foregoing, and by arresting Mr. Long without probable cause, or failing to intervene to prevent this conduct, defendant Yarton and the Police Officer Defendants deprived Mr. Long of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States and secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution to be free from false arrest, false imprisonment, and/or malicious prosecution.

49.   By reason of the foregoing, defendant Yarton and the Police Officer Defendants, acting intentionally, maliciously, and without justification or probable cause, caused accusatory instruments to be filed and otherwise brought criminal charges against Mr. Long, who was repeatedly held in police custody on charges that were ultimately dismissed, or that the New York County District Attorney's Office declined to prosecute.

50. The wrongful, unjustifiable, and unlawful apprehensions, arrests, detentions, imprisonment, and prosecutions of Mr. Long were carried out without valid warrants, without Mr. Long's consent, and without probable cause or reasonable suspicion.

51. All forcible stops, arrests, detention, imprisonment, and prosecution occurred without any fault or provocation on the part of Mr. Long.

52. Defendant Yarton and the Police Officer Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment as NYPD officers. Defendant Yarton and the Police Officer Defendants' acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. These defendants acted willfully, knowingly, and with the specific intent to deprive Mr. Long of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

53. As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Long sustained the damages hereinbefore alleged.

**SECOND CAUSE OF ACTION**
42 U.S.C. § 1983 / First and Fourteenth Amendments
(Against defendant Yarton and Police Officer Defendants)

54. Mr. Long repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

55. Mr. Long's solicitation of funds from passersby is constitutionally protected speech.

56. By reason of the foregoing and by repeatedly harassing, falsely arresting, falsely imprisoning, and/or maliciously prosecuting Mr. Long, defendant Yarton and the

Police Officer Defendants deprived Mr. Long of the rights, remedies, privileges, and immunities guaranteed to every citizen of the United States and secured by 42 U.S.C. § 1983, including, but not limited to, the right to free speech guaranteed by the First and Fourteenth Amendments to the United States Constitution.

57.   Defendant Yarton and the Police Officer Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment as NYPD officers and employees.  These acts by defendant Yarton and the Police Officer Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers.  These defendants acted willfully, knowingly, and with the specific intent to deprive Mr. Long of his constitutional rights secured by 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

58.   As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Long sustained the damages hereinbefore alleged.

**THIRD CAUSE OF ACTION**
42 U.S.C. § 1983 / Fourth and Fourteenth Amendments
(Against Defendant Charles Yarton)

59.   Mr. Long repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

60.   Pepper spraying Mr. Long while Mr. Long was in custody in a locked holding cell was beyond the scope of defendant Yarton's jurisdiction, without authority of law, and in abuse of his powers.  Defendant Yarton acted willfully, knowingly, and with the specific intent to deprive Mr. Long of his constitutional rights secured by

42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

61. When pepper spraying Mr. Long, defendant Yarton acted under pretense and color of state law, in his individual and official capacity, and within the scope of his employment as an NYPD officer.

62. As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Long sustained the damages hereinbefore alleged.

### FOURTH CAUSE OF ACTION
Assault and Battery
(Against Defendant Charles Yarton)

63. Mr. Long repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

64. Defendant Yarton, acting within the scope of his employment, intentionally, willfully, and maliciously assaulted Mr. Long, in that he had the real or apparent ability to cause imminent harmful and/or offensive bodily contact and intentionally did violent and/or menacing acts which threatened such contact to Mr. Long, and that such act(s) caused apprehension of such contact in Mr. Long.

65. Defendant Yarton, acting within the scope of his employment, intentionally, willfully, and maliciously battered Mr. Long when he, in a hostile and/or offensive manner, pepper-sprayed Mr. Long without his consent, and with the intention of causing harmful and/or offensive bodily contact to Mr. Long.

66. As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Long sustained the damages hereinbefore alleged.

### FIFTH CAUSE OF ACTION
False Arrest and Imprisonment

(Against defendant Yarton and Police Officer Defendants)

67. Mr. Long repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

68. By wrongfully and illegally arresting, detaining, and imprisoning Mr. Long on January 13, 2011, defendant McDonald, under pretense and color of state law and acting within the scope of his employment as an NYPD officer, falsely arrested and falsely imprisoned Mr. Long in violation of New York State law.

69. By ordering Mr. Long's wrongful and illegal arrest and imprisonment on January 13, 2011 without having probable cause to do so, defendant Johnson falsely arrested and falsely imprisoned Mr. Long in violation of New York State law.

70. By witnessing Mr. Long's wrongful and illegal arrest and imprisonment on January 13, 2011 and failing to intervene, other Doe Defendants falsely arrested and falsely imprisoned Mr. Long in violation of New York State law.

71. The New York County District Attorney's Office declined to prosecute Mr. Long for the January 13, 2011 arrest.

72. By wrongfully and illegally arresting, detaining, and imprisoning Mr. Long on February 1, 2011, defendants Yarton and Perez, under pretense and color of state law and acting within the scope of their employment as NYPD officers, falsely arrested and falsely imprisoned Mr. Long in violation of New York State law.

73. By witnessing Mr. Long's wrongful and illegal arrest and imprisonment on February 1, 2011 and failing to intervene, other Doe Defendants, falsely arrested and falsely imprisoned Mr. Long in violation of New York State law.

74. The criminal case against Mr. Long stemming from the February 1, 2011 arrest is still pending, after multiple adjournments.

75. By wrongfully and illegally arresting, detaining, and imprisoning Mr. Long on June 5, 2011, defendants Broughal and Foley, under pretense and color of state law and acting within the scope of their employment as NYPD officers, falsely arrested and falsely imprisoned Mr. Long in violation of New York State law.

76. By ordering Mr. Long's wrongful and illegal arrest and imprisonment on June 5, 2011 without having probable cause to do so, defendant Caruso falsely arrested and falsely imprisoned Mr. Long in violation of New York State law.

77. By witnessing Mr. Long's wrongful and illegal arrest and imprisonment on June 5, 2011 and failing to intervene, other Doe Defendants, falsely arrested and falsely imprisoned Mr. Long in violation of New York State law.

78. The New York County District Attorney's Office declined to prosecute Mr. Long for his June 5, 2011 arrest.

79. By wrongfully and illegally arresting, detaining, and imprisoning Mr. Long on October 16, 2011, defendants Chatterton and McLeish, under pretense and color of state law and acting within the scope of their employment as NYPD officers, falsely arrested and falsely imprisoned Mr. Long in violation of New York State law.

80. By witnessing Mr. Long's wrongful and illegal arrest and imprisonment on October 16, 2011 and failing to intervene, other Doe Defendants, falsely arrested and falsely imprisoned Mr. Long in violation of New York State law.

81. The criminal case against Mr. Long stemming from the October 16, 2011 arrest is still pending.

82. All above-listed apprehensions, arrests, and detentions of Mr. Long occurred without any fault or provocation on the part of Mr. Long. During all four arrests, Mr. Long was falsely charged.

83. Defendant Yarton and the Police Officer Defendants' wrongful, unjustifiable, and unlawful apprehensions, arrests, and detentions of Mr. Long were intentional, and carried out with Mr. Long's knowledge but without his consent. Defendant Yarton and the Police Officer Defendants lacked probable cause or any other basis in law to arrest or imprison Mr. Long. At all relevant times, defendant Yarton and the Police Officer Defendants acted forcibly in apprehending and arresting Mr. Long.

84. Defendant Yarton and the Police Officer Defendants acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of Mr. Long's rights, privileges, welfare, and well-being and are guilty of egregious and gross misconduct towards Mr. Long.

85. All four false arrests took place within the one year statute of limitations for intentional torts in New York.

86. As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Long sustained the damages hereinbefore alleged.

### SIXTH CAUSE OF ACTION
Malicious Prosecution
(Against Police Officer Defendants)

87. Mr. Long repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

88. Defendants McDonald and Johnson, without probable cause, charged Mr. Long with disorderly conduct. In so doing, defendant McDonald acted maliciously,

wantonly, willfully, and recklessly, and with reckless disregard for Mr. Long's rights. The New York County District Attorney's Office declined to prosecute Mr. Long based on the allegations of defendants McDonald and Johnson.

89. Defendants Broughal, Foley and Caruso, without probable cause, charged Mr. Long with disorderly conduct. In so doing, defendant Broughal acted maliciously, wantonly, willfully, and recklessly, and with reckless disregard for Mr. Long's rights. The New York County District Attorney's Office declined to prosecute Mr. Long based on the allegations of defendants Broughal, Foley and Caruso.

90. Defendants Johnson and Caruso, and other Doe Defendants, without probable cause, ordered and/or approved the prosecutions of Mr. Long alleged in paragraphs 68-71 and 75-78 above. In so doing, defendant Johnson and Caruso, and other Doe Defendants, acted maliciously, wantonly, willfully, and recklessly, and with reckless disregard for Mr. Long's rights.

91. As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Long sustained the damages hereinbefore alleged.

### SEVENTH CAUSE OF ACTION
Plea for Injunctive Relief
(Against Defendants the City, Raymond Kelly, Inspector Dennis DeQuatro, and Deputy Inspector Timothy J. Beaudette)

92. Mr. Long repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

93. Mr. Long's constitutional rights have repeatedly been violated by the intentional, willful, malicious, and unlawful conduct of the NYPD, its officers and employees.

94.     Mr. Long requires injunctive relief because he intends to continue begging with his sign in the Times Square area. Without an injunction, it is virtually assured that the NYPD will continue to violate Mr. Long's constitutional rights.

95.     Mr. Long seeks an Order preliminarily and permanently enjoining all officers assigned to patrol within the territorial boundaries of the Midtown North or Midtown South commands from telling Mr. Long to move along, or other words to that effect, while he is lawfully and peacefully on a public sidewalk and not blocking pedestrian traffic; and not to issue a summons to him or arrest him while he is peacefully holding his sign on a public sidewalk, unless the officer engaging Mr. Long has probable cause to believe that he is violating a specific provision of the disorderly conduct law, the aggressive solicitation ordinance, or another applicable law.

## PRAYERS FOR RELIEF

WHEREFORE, Mr. Long respectfully requests that the Court grant the following relief jointly and severally against defendants:

(A)     an Order granting the preliminary and permanent injunctive relief specified in paragraph 87;

(B)     compensatory damages in an amount to be determined at trial;

(B)     punitive damages against defendant Yarton and the Police Officer Defendants only, in an amount to be determined at trial;

(C)     an Order awarding plaintiff reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

(D)     such other further relief as the Court may deem just and proper.

Dated: New York, New York
      February 15, 2012

                        EMERY CELLI BRINCKERHOFF &
                        ABADY LLP

                        /s/ Matthew D. Brinckerhoff
                        Matthew D. Brinckerhoff
                        Samuel Shapiro
                        75 Rockefeller Plaza, 20th Floor
                        New York, New York 10019
                        (212) 763-5000
                        *Attorneys for Plaintiff*